UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X   Civ. No.

BRYAN SEXTON,

                            Petitioner,

            v.                                                  DECLARATION IN
                                                                SUPPORT OF PETITION
JAKE KARAM, KENT HUGHES,                                        TO VACATE AND
VLADIMIR SHUSHKOVSKY, and IAN WINTER ,                          FOR DISCOVERY

                            Respondents.

---------------------------------------------------------X

Leslie Trager, an attorney duly admitted to practice of law before this Court, declares

as follows.

        1. I am counsel to the petitioner in the above entitled matter.  Petitioner has

brought a petition to vacate an arbitration award on two grounds: 1. That the award

delivered to the petitioner resulted from fraud and corruption and 2. That the award

is not reasoned and therefore does not comply with the rules governing the arbitration.

        2. This declaration  addresses only the fraud and corruption which resulted in

the true award issued by the arbitration panel in May 2014 being substituted with a

false award dated July 28, 2014.  The evidence presented in this declaration shows

that this substitution was accomplished by respondents, with the aid of certain persons

administering  the  arbitration  proceedings  at  the  International  Centre  for  Dispute

Resolution ("ICDR").

**Evidence of the May 2014 award.**

3.   The existence of the May 2014 award is demonstrated by the following evidentiary facts: On June 16, 2014 an invoice dated June 5, 2014 was received by petitioner Bryan Sexton ("petitioner") via U.S. mail.  This invoice for a total of $3,616.10 included an amount for $3,390 for "Fee for Increased Claim" posted on May 16, 2014 (A copy of this invoice is attached as Exhibit C to the Petition).

4.   The Fee for Increased Claim referred to permission received from the arbitrators by petitioner to increase his claim as the result of an exchange of emails among counsel and arbitrators on March 11 -12, 2013 - over a year prior to the posting on May 16, 2014.  Petitioner's request to increase the amount of his claim in 2013 was based on a recently received valuation from petitioner's expert. At that time in 2013, the ICDR case manager Carmen Preda informed petitioner that the fee for the increased claim would be waived because of the high cost of the arbitration.

5.  The only reason to revisit in 2014 the issue of the fee for the increased claim would be the receipt of an award at the ICDR.  Upon receipt of an award from the panel, the ICDR does a final accounting to make sure all fees are paid.  Thus, it is standard practice at the ICDR and the American Arbitration Association (the ICDR is a division of the American Arbitration Association), when a draft award is received

from the arbitrators, to check the fees and costs associated with the proceedings and to allocate them in accordance with the draft award.  Once this is done and the ICDR staff reviews the award for form and typos, it is returned to the arbitrators for signature. Petitioner understood that it was this review of fees and costs which caused the May 16 posting of the fee for increased claim.

6.   The draft award therefore is essentially the final award, except for the ministerial procedures described above.  The ICDR staff is not allowed to make any substantive change to the draft award of the arbitrators.

7.   Thus the May 16, 2014 posting is compatible only with the prior receipt of a draft award.  It was also approximately the time when an award should have been received.  The last brief had been submitted on April 7, 2014, along with the parties costs statements, the arbitrators had announced that these submissions would close the hearings and the arbitrators had promised in their prior order that "The Tribunal intends to render its award shortly after the final briefing." (Order of February 25, 2014.  For details, see paras. 29-31 of petition).  Thus, it was anticipated that an award would issue no later than the first half of May, approximately a month after the close of the hearings.

8.   This understanding that the May 16 posting was triggered by the receipt of a draft award was confirmed by the case manager Carmen Preda.  As detailed in

petitioner's affidavit, after receipt of the invoice on June 16, 2014, petitioner telephoned Preda and asked her why he had received a new bill for an increase in the filing fee over two months after the close of the hearings.  She stated that she had received an award from the arbitrators and a review of the award had demonstrated an "accounting error" relating to the amount of the filing fee.

9.  Petitioner asked her when he could expect to receive the award.  Preda stated that "all that remained was for the arbitrators to sign and notarize the award, but this had been delayed because the chairman of the panel had a sick family member and had been unable to sign the award."

10.  In order to make sure that the award was not held up because of any failure by petitioner to pay this new bill, the invoice was fully paid a few days later on June 23, 2014.

11.   Carmen Preda assured me that this was the last and final bill. Subsequently, she sent an email note on June 23 acknowledging payment of the June 5 invoice.

12. But in fact, no award was received until July 28, 2014 - more than two months after the May 16 posting by the ICDR.   Moreover, this award was received only after I called a vice president at the ICDR, Thomas Ventrone, on July 23.  By that time over 100 days had passed since the close of the hearings on April 7, when the

4

normal time for issuing awards is usually a maximum of 60 days. (Effective June 1, 2014 the ICDR rules provide for a limit of 60 days). Mr. Ventrone told me that he did not know anything about this but would look into it and get back to me. On July 24, Mr. Ventrone called and stated that he now had "a draft of the award on his desk" and that the signed award would be sent the following week. This draft award was apparently sent back to the arbitrators in time for two of them to sign on July 25 and the third to sign on July 28.

13.   Petitioner has never received any explanation as to why it took from prior to May 16, 2014, when at the minimum a final draft award had been received at the ICDR, until July 28 for an award to be signed.  Nor has any explanation been offered as to why the other two arbitrators did not sign in May, since only the chairman was said to have an illness in the family which allegedly prevented him from signing the award for over two months.

14.   It is very likely that a signed award was actually received by the ICDR in May 2014.  But whether a "draft" award or a signed award was received by the ICDR in May 2014 should make no difference since both constitute a reflection of the final decision of the arbitrators.

**Evidence of Corruption at the ICDR.**

15.   The following paragraphs will set forth the evidence of corruption at the

5

ICDR which resulted in the suppression of the May 2014 award and the false award of July 28, 2014.

16. On May 6, 2014 a letter addressed to all counsel was received from Carmen Preda declaring that the hearings which the arbitrators had closed on April 7 were "declared closed as of April 7, 2014" (Exhibit B to petition).  As discussed *infra*, the letter appeared to serve no legitimate purpose.  However, this letter contains information which Carmen Preda did not know and errors which she would not have made. First, the information she did not know.  The letter is addressed to me at my new home in Washington DC.  I moved there in August 2012, but do not practice law there.  In fact, it would be difficult to locate me using public information because of the fact that I do not practice there and continue to maintain my office in New York. Neither Carmen Preda, nor anyone else at the ICDR, was aware that I had moved my home and on all communications concerning this case I always gave my office address as 230 Park Avenue, New York, NY 10169.  Moreover,  Carmen Preda knew my New York office address as the place to address me.  Thus, when I asked her in August 2014 to send me one of the original copies of the award, she did not ask me where I wanted it sent or for my address.  Nor did I offer to tell her or mention it.  But the original award arrived at my New York office as promised by her.

17. Only two people connected to this ICDR arbitration could have known of

my move to Washington - the chairman to whom I mentioned it in a casual conversation, and Nathaniel Dudley, counsel to respondent Hughes, who may have noticed a 202 area code on his screen if I called him from my home number.

18. Second: Errors which Carmen Preda would not have made. That someone other than Preda prepared the May 6 letter is shown by the fact that the letter is addressed to Nathaniel Dudley at the firm of McGivney and Kluger, P.C.  Mr. Dudley had notified all parties and the ICDR on January 21, 2013 that "effective  today, my new contact information will be as follows: ... Eckert Seamans Cherin & Mellot, LLC...." with an email address of "ndudley@eckertseamans.com."   Preda had been addressing Dudley at his new firm for a year and a half prior to the May 6 letter and was well aware of the correct address. Carmen Preda has been with the ICDR since July 2005, so such an error is inconsistent with her experience.

19.  That it was respondents or their agents who drafted this May 6 letter for Preda to send out will be shown by later developed evidence linking the mistaken Dudley address  to the law office of Irvin Schein, attorney for respondents Karam and Shushkovsky.

20.  As noted, the May 6 letter was also unusual in that it was without any legitimate purpose.  The letter reads:

> "The ICDR has received notice from the Tribunal
> that no additional evidence is to be submitted.  Therefore,

> the Hearings are declared closed as of April 7, 2014 and
> the Tribunal will endeavor to render an Award promptly.
> Please do not transmit any further communications
> or documentation directly to the Tribunal.  Any and all
> communications shall be directed to the ICDR copying the
> other parties. (emphasis added).

The arbitrators had over a month before declared the hearings closed as of April 7, so what was the purpose in sending a letter a month later saying that.  But the most unusual part of this letter was the last sentence ordering all communications to the ICDR copied to all other parties.  The ICDR is an administrative agency managing the process.  There are many occasions when it is appropriate to communicate with the ICDR about administrative matters which do not go to the merits, are not intended for the arbitrators, and which may include a question or matter that concerns only one party.  It appears that the reason for this statement is that respondents wanted to make sure they knew of any steps which petitioner might be taking and this was simply a way of warning petitioner away from doing anything without them knowing.

21.  That Preda was engaged in slowing down the process in order to allow time for a false award to be prepared and substituted is also shown by the June 5 invoice received by petitioner on June 16.  As noted, the last charge, and the only significant charge, was the May 16 posting for the fee increase.  If the ICDR wanted to get its fee for the increased claim and an award had been received, why did Preda not notify petitioner immediately by email of this invoice, as she had done on all prior invoices.

Here, Preda sent the invoice only by U.S. mail.

22.  The email of July 28, attaching the award and a cover letter by Preda, also was not prepared by Preda but by respondents (Exhibit D to petition). The email should have gone to counsel for the parties plus the arbitrators.  Instead, it is addressed to petitioner as well as various secretaries who should not have been recipients.  The attached letter from Preda stating that "By direction of the Tribunal we herewith transmit to you the duly executed Final Award ..." should have included me as counsel to petitioner as one of the addressees, but instead petitioner's name and address was listed on the letter rather than counsel's.

23.  Indeed, the addressees in the email and letter were not the same.  The email lists as addressees a legal assistant to Schein and assistants to the three arbitrators. None of these are listed in the attached letter.  The letter lists Samantha Prasad, Esq., a lawyer in Schein's law firm, but does not list Schein. However Prasad was never involved in the arbitration, so Preda could not have known of her. Prasad is also not listed on the email.

24. Most importantly, this letter enclosing the July 28 award was addressed to Nathaniel Dudley at his former firm "Via Email to: ndudley@mklaw.us.com"  -an address which has not existed since January 2013.  But Preda did not send this email to the wrong address for Dudley in a subsequent communication of September 4

states: "On July 28, 2014, I received via email, a copy of the written award..."  Nor did she mail an original of the award to the wrong firm because in that same September 4 letter Dudley states: "On August 8, 2014, I received, via federal express, the identical award...."  Thus, it is beyond doubt that Preda sent the email and the award to Dudley at the correct addresses even though the contact information set forth in her purported letter of July 28 was wrong with respect to Dudley's address.  The only logical conclusion from these facts is that the July 28, 2014 letter "transmit[ting] ... the duly executed Final Award ...."  was drafted by someone other than Preda who mistakenly used the wrong addresses.

25.  On August 26, 2014 I sent a letter to the arbitrators pursuant to Article 33 of the ICDR rules asking if the July 28 award was the real award and pointing out some of the glaring mistakes made in the award (Exhibit F to petition).  Schein's response of September 4, 2014 (Exhibit G to petition) to my August 26 letter to the arbitrators demonstrates that his office prepared the letters of May 6 and July 28 sent by Prada on behalf of the ICDR.

26.  Thus, the email of September 4 enclosing the Schein response was sent by Beth Lackey "Legal Assistant to A. Irvin Schein."  The address to which this email was sent to Dudley is listed as "ndudley@mklaw.us.com" -- the address from Mr. Dudley's former firm which he has not used since January 2013.  It is obviously

consistent with the above letters from Preda containing this same mistake.  The September 4 letter from Schein attached to this email makes the same mistake by listing Dudley at "Nathaniel Dudley, McGivney and Kluger, P.C. (via e-mail)."

27.  It is submitted that the  only conclusion that can be drawn from the above evidence is that Schein's secretary, in preparing the documents for Preda at the ICDR to distribute, copied on her computer an early letter addressed to Mr. Dudley before he had changed law firms and put in the wrong information. Preparation of documents by respondents, which were later sent by the ICDR, is clearly corruption and demonstrates that respondents have corrupted the process at the ICDR with respect to the issuance of the award.

28.  There is also evidence that the July 28 award, which came with July 28 letter drafted by Schein, was written by Schein too.  Thus, the opening paragraph of the July 28 award reads:

> "Nearly ten year ago, Claimant invested $150, 000 in a start-up gaming company called Red Star focused on the Russian-language market, a business he knew little about.  He invested through a close corporation and did not know the other investors. Not surprisingly, the investment has not lived up to his expectations...."  (emphasis added).

This wording indicates a predisposition on the part of the arbitrators - something which experienced arbitrators would not do.  And Schein frequently uses the phrase "not surprisingly."  Thus, Schein writes on page 4 of his post hearing brief: "Not

surprisingly, Claimant's first argument ... completely misses the point ...." Paragraph 3 of his pre-hearing memorandum reads: "Not surprisingly, Sexton's bizarre assertions are completely unsupported."

29.   In addition, as detailed in the petition, the award makes major mistakes in favor of respondents, and, as noted, is inconsistent with the way experienced arbitrators would write an award. Other examples are: petitioner did not mention in his post hearing brief either CC Capital or Red Star Poker, which were two nominal respondents, because CC Capital has no assets and Red Star Poker is not a legal entity. The July 28 award refers to this by saying, "In the end, Claimant did no better against the individual Respondents [than it did against the nominal respondents]." (Para. 205, Exhibit A). Or such remarks as: "After three year of arbitral proceedings, including extensive discovery from the Respondents and third parties, Claimant proved only that his investment in a start-up gaming venture turned out poorly." (Para. 206, Exhibit A). Such phraseology is not likely to be written by experienced arbitrators.

30.   There are two further pieces of evidence showing corruption of the award process at the ICDR and the substitution of the awards:

A. Within a few days after I sent the August 26, 2014 letter to the arbitrators questioning the validity of the July 28 award, the chairman fired his secretary Michelle Walker McCall.  The timing is such that it is believed that this firing is

linked to the substitution of the false award of July 28.

B.  Apparently, to make it look as though the reason for the delay of the award from May 16, 2014 to July 28, 2014 was an outstanding invoice, Preda sent by email on July 28 a new invoice showing an overdue balance of $5,390 (exhibit E to petition). This "balance" consisted of two items: the May 16 posting for the increased claim as being unpaid with the explanation: "refund - $3,390" and an item for December 1, 2011 in the amount of $2,000 for "Fee for Increased Claim."  As noted earlier, the May 16 posting was paid on June 23. The posting for December 1, 2011 was paid two and a half years earlier and the invoice of June 5, 2014, Exhibit C, does not reflect this 2011 item as being outstanding at that time. Thus, the July 28 invoice is a false bill sent by Preda apparently to give an excuse for the long delay in signing the award by claiming that the arbitrators were waiting until petitioner paid before signing.

31.  Despite my letter to the arbitrators of August 26, with a copy to Preda at the ICDR, in which I stated "there is evidence that the ICDR's administrative process has been interfered with by respondents," no one from the ICDR  ever asked me what evidence I had of this.

32.  As further shown in the petition, there is substantial evidence that during the arbitration proceedings, respondents interfered with the judicial process by causing

two subpoenaed witnesses to submit documents prepared by respondents rather than the witnesses' real documents and paying a witness not to attend the hearings as a witness for the petitioner.  The facts relating to these are fully set forth in the petition and will not be repeated here (see paras. 71-85).  These facts demonstrate the respondents willingness to interfere with the arbitration process.

**The arbitrators appear to accept the false award.**

33.  The arbitrators responded to my letter of August 26 by email on September 22, stating that the panel "confirms" that the July 28 award is "intended to be their Final Award in this arbitration proceeding."  (Exhibit H to petition). Given the above evidence showing that letters coming from the ICDR were prepared by respondents or their agents, the receipt of an award prior to May 16 admitted to by Preda and the inexplicable delay in sending the award, it is submitted  that it is likely that the arbitrators have decided to accept this false award in order to conceal the misdeeds of the ICDR.

**The Discovery Required.**

34.  It is submitted that petitioner has demonstrated substantial facts supporting these serious charges.  However, in order to prove the existence of the May 2014 award, it will be necessary for petitioner to have discovery.  Thus, discovery would be necessary as to the ICDR and its employees, Schein's office and limited discovery

with respect to the arbitrators.  Such discovery should disclose the existence of the May award.

35.  Until that discovery is complete, no purpose would be served in examining whether the July 28 award is a reasoned award because if it turns out that petitioner is correct about the existence of the May award, there would be no reason to review the July 28 award, which would clearly be shown to be a false award.

WHEREFORE, declarant requests that this Court grant the motion to vacate the July 28, 2014 award, after allowing for discovery to determine the existence of the May 2014 award, and such other and further relief as to the court shall seem just and proper.

Dated: October 9, 2014                     Respectfully submitted,

_S/_____
Leslie Trager (lt 8995)
Attorney for Petitioner